UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 3:15-cr-14-GFVT-REW |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| BRIAN C. WALTERS, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Federal Rule of Evidence 404(b) allows evidence of a criminal defendant's prior bad acts to be introduced for purposes other than proving a person's character and his propensity to act in accordance with that character.  In this case, the Government and Defendants dispute whether certain evidence is admissible under that rule.  While the Government claims the noticed evidence is relevant to proving Defendants' intent, plan, and knowledge, Defendants maintain admitting the evidence would violate the protections of the rule.  For the reasons that follow, the Court GRANTS IN PART but DENIES IN PART Defendant Brian Walters's motion to exclude admission of the evidence in question.

**I**

The five Defendants in this matter are charged with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 1349 and ninety-nine counts of aiding and abetting one another to commit healthcare fraud in violation of 18 U.S.C. §§ 2 and 1347.  [R. 1.]  On August 9, 2016, the Government filed a notice of its intent to seek the admission of two categories of evidence falling within the scope of Federal Rule of Evidence 404(b).  [R. 112.]

Specifically, the Government desires to introduce proof of a series of allegedly inappropriate procedures that Defendants' laboratory, PremierTox, used for its urine drug testing, as well as evidence related to allegedly inappropriate payments Defendant Robert Bertram made to promote business referrals to PremierTox. [*Id.*]  Defendant Brian C. Walters filed a response in opposition to the notice, as well as a motion to preclude admission of the evidence and a conditional motion for severance, pending the Court's decision on admissibility.  [R. 116; R. 117.]  Defendants James W. Bottom and Robin G. Peavler have joined in Defendant Walters's request introduction of the noticed evidence.[1]  [R. 120; R. 154.]

Defendants Walters, Wood, and Peavler maintain the noticed evidence is inadmissible under Federal Rule of Evidence 404(b).  Pursuant to that rule, "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  Nevertheless, the rule goes on to note in relevant part that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  The Sixth Circuit has adopted a three-part test that courts use to decide whether to admit or exclude evidence under Rule 404(b):

> *First*, the district court must decide whether there is sufficient evidence that the other act in question actually occurred.  *Second*, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character.  *Third*, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potentially prejudicial effect.

---

[1] Dr. Robin Peavler's motion for joinder in Walters's motion, which remains pending as of this date, will be granted herein.  [R. 154.]

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003) (emphasis in original); *see also United States v. Yu Qin*, 688 F.3d 257, 262 (6th Cir. 2012).

Notably, Rule 404(b) "does not extend to evidence of acts which are 'intrinsic' to the charged offense." Fed. R. Evid. 404 advisory committee's note. Put another way, "Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity." *United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998) (quoting *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995)). Ultimately, this Court has broad discretion to determine whether bad acts evidence is admissible. *See, e.g.*, *United States v. Stout*, 509 F.3d 796, 799 (6th Cir. 2007).

## II

### A

The United States seeks to introduce evidence of payments made by Defendant Robert Bertram to Willow Rouben and Night Hawks Investment Company in exchange for business referrals to PremierTox and Nexus, a laboratory not referenced in the indictment but allegedly owned, at least in part, by Dr. Bertram. [R. 112 at 3.] These payments, which might violate the Anti-Kickback Statute, 42 U.S.C. § 1320a-7(b)(b), provide a classic example of a "crime, wrong, or other act" under Rule 404(b). Because the test for admitting the evidence is not satisfied, any evidence of these payments shall be inadmissible at trial.

The relevant three-prong test first asks the Court to consider whether there is sufficient evidence to prove the inappropriate payments actually occurred. The Government claims that evidence of the payments has already been produced through discovery [R. 112 at 4], and several exhibits attached to the Government's notice do seem to corroborate that contention. [*See, e.g.*,

3

R. 153-18.] But whether sufficient evidence exists to prove the kickbacks is immaterial, because the second and third prongs of the Rule 404(b) test are not satisfied.

The second prong of the test requires the Court to decide whether the evidence of inappropriate payments is probative of a material issue other than the Defendants' character. *See Jenkins*, 345 F.3d at 937. According to the United States, the kickbacks "demonstrate Defendant Bertram's and Wood's intent, knowledge, and plan to induce referrals for unnecessary urine drug testing so that they could bill insurance companies for such services." [R. 112 at 5.] This argument requires a logical leap the Court is unwilling to take. Inappropriate payment arrangements do not, by default, indicate intent to defraud. It is certainly possible for an individual or entity to make illicit payments in order to obtain what would otherwise constitute legitimate business. And while it is also true that an individual could offer kickback payments for purposes of furthering a fraudulent scheme, the third prong of the test requires the Court to consider the prejudicial impact of the evidence.

Here, the probative value of the evidence that the Government has proffered is outweighed significantly by its prejudicial impact. *See Jenkins*, 345 F.3d at 937; Fed. R. Evid. 403. The kickback evidence does little to prove Defendants actually defrauded Medicaid and Medicare and instead suggests to the jury that Defendants are generally engaged in shady business practices. This is exactly what Rule 404(b) is designed to prevent—the rule helps ensure a defendant is convicted for something he *did* rather than for who he *is*, or who the jury perceives him to be. Because the kickback evidence prejudices Defendants substantially more than it helps the Government prove its case, the evidence will not be admitted at trial.

**B**

The Government also noticed its intent to introduce evidence of various allegedly inappropriate urine drug testing procedures used at Defendants' laboratory, PremierTox. Specifically, the Government seeks to prove Defendants (1) used pre-checked order forms; (2) performed quantitative confirmation testing on all urine samples, including those with negative test screening results; (3) performed quantitative urine drug testing without proper documentation that the tests in question were ordered by a physician; (4) excessively tested all samples solely in order to maximize reimbursement; and (5) performed double confirmation procedures on single samples. [R. 112 at 2.] Defendants maintain the evidence is inadmissible under Rule 404(b) and argue the Government can prove the charges set forth in the indictment without referencing this list of allegedly wrongful practices.

In the Court's eye, these laboratory practices implicate Federal Rule of Evidence 403 inasmuch as they do Rule 404(b). But in any event, the evidence need not be excluded under either rule. The first and second prongs of the 404(b) analysis are satisfied here. The Government has proffered evidence sufficient to show PremierTox was engaged in the practices in question. The practices are probative of issues other than Defendants' character, such as Defendants' knowledge of whether drug tests performed at PremierTox were medically necessary, absence of mistake, and lack of accident. *See* Fed. R. Evid. 404(b)(2). And as for the third prong, the 404(b) analysis asks the Court to consider whether the probative value of the evidence in question is substantially outweighed by its prejudicial effect, which essentially requires a Rule 403 analysis. *Compare Jenkins*, 345 F.3d at 937, *with* Fed. R. Evid. 403. Because this prong is not satisfied, the evidence is admissible.

Evidence of the inappropriate urine drug testing procedures may prejudice Defendants, but any good evidence put on by the prosecution theoretically will result in some prejudice. The rule requires exclusion only where the prejudice substantially outweighs the probative value, and, here, the evidence is simply more probative than it is prejudicial. Defendants repeatedly emphasize that the length of the trial will increase if the noticed evidence is admitted, and that may well be true. But the Court does not agree that the evidence will result in an unwarranted "trial within a trial." *See Yu Qin*, 688 F.3d at 264. The proffered evidence is germane to the case's key issue—it demonstrates that PremierTox protocol resulted in procedures that were not medically necessary, and Defendants are on trial for knowingly billing Medicare, Medicaid, and private payors for procedures that were not medically necessary. Admitting the evidence allows the Government to paint a full picture of PremierTox to the jury, which will in turn help the jury determine how much knowledge, if any, Defendants as co-owners and operators of PremierTox had of the alleged scheme to defraud.

Along those same lines, the jury will not be automatically swayed in favor of the Government merely because of the amount of Government evidence presented. Notably, the jury will be specifically instructed to avoid conflating the number of witnesses and the amount of evidence presented with Defendants' potential guilt. *See, e.g.*, Sixth Circuit Pattern Jury Instructions §§ 1.08, 7.02A, *available at* http://www.ca6.uscourts.gov/pattern-jury-instructions. And, of course, Defendants are free to introduce their own evidence demonstrating the practices were not actually improper, and they can downplay the importance of those practices through cross-examination.

While Defendants ultimately maintain the noticed evidence is outside the scope of the indictment, they can hardly be surprised the Government seeks to introduce it. The indictment

does emphasize the delay in testing certain frozen urine samples, but it also references the drug testing practices now at issue.  [*See* R. 1 at 5 (describing the PremierTox policy of performing quantitative confirmation tests regardless of the qualitative drug screen results and noting the physician's examination form pre-checked a particular order).]  Although the Court recognizes Defendants' concerns, it cannot conclude the concerns significantly outweigh the probative value of the laboratory's practices, which are directly relevant to the Government's case-in-chief.

Relatedly, Defendant Walters suggested during oral argument that allowing the Government to admit this evidence would constitute a constructive amendment to the indictment.  According to Mr. Walters, the indictment *only* alleges fraud on the basis of the delay in testing the urine samples, and any other evidence tending to prove fraudulent activity would be extraneous and inadmissible.  After reviewing the case law, the Court concludes admission of the evidence would not constitute a constructive amendment.  Instead, admission of the evidence would, at best, result in a variance that would not affect the substantial rights of any of the five Defendants.

In *United States v. Budd*, 496 F.3d 517 (6th Cir. 2007), the Sixth Circuit laid out the difference between a constructive amendment to an indictment, which is *per se* prejudicial, and a variance, which is not.  "A constructive amendment results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *Id.* at 521 (quoting *United States v. Smith*, 320 F.3d 647, 656 (6th Cir. 2003)).  By contrast, a variance "occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Id.* (quoting *United States v. Prince*,

7

214 F.3d 740, 756-57 (6th Cir. 2000)).  The key question in distinguishing the two is whether the offense described by the indictment and the one ultimately proven at trial and described in the jury instructions are two *alternative crimes*, or merely two *alternative methods* by which one crime could have been committed.  *Id.* at 522.  The Government's proposed 404(b) evidence has no impact on the actual charging terms; thus, the relevant inquiry is whether admitting the inappropriate urine drug testing evidence would result in a prejudicial variance.

"To obtain reversal of a conviction because of a variance between the indictment and the evidence produced at trial, a defendant must satisfy a two-prong test: (1) the variance must be demonstrated and (2) the variance must affect some substantial right of the defendant." *Prince*, 214 F.3d at 757.  As for the first prong, it is unclear whether admission of the evidence in question would actually demonstrate a variance.  The Government still plans to introduce evidence of the delay in testing as the Defendants' chief method of committing the alleged crimes.  It simply also desires to introduce evidence of PremierTox's questionable urine drug testing protocol to provide context for the delay, not necessarily to prove a distinct method of committing the alleged crimes.  This makes sense, because "the jury is entitled to know the 'setting' of a case.  It cannot be expected to make its decision in a void—without knowledge of the time, place and circumstances of the acts which form the basis of the charge." *United States v. Weinstock*, 153 F.3d 272, 277 (6th Cir. 1998) (quoting *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir. 1977)).

But even if Defendants could demonstrate a variance, they have not shown any violation of their substantial rights.  *See Prince*, 214 F.3d at 757.  As explained above, Defendant Walters's chief argument appears to be that admitting the evidence will increase the amount of time necessary to try the case.  While the length of trial is undoubtedly something to keep in

8

mind when evaluating prejudice to a defendant, a four to six week trial on a one hundred count indictment for conspiracy to commit healthcare fraud is not unusual. And just as Defendants have not demonstrated that undue prejudice will result from admitting the evidence under Rule 403, Defendants have not shown a violation of their substantial rights so as to obtain relief from an inappropriate variance. As a result, the Court finds the evidence of inappropriate urine drug testing procedures noticed by the Government to be properly admitted at trial.

### III

Being otherwise sufficiently advised, the Court hereby **ORDERS** as follows:

1. Defendant Robin Peavler, M.D.'s motion for joinder [R. 154] is **GRANTED**;

2. Defendant Walters's Motion to Preclude Reference to Prejudicial Allegations [R. 117] is **GRANTED IN PART** and **DENIED IN PART**, consistent with the Court's explanation above; and

3. Any Defendant wishing to submit a motion for severance in light of this Order **SHALL FILE** an individual motion requesting such within **ten (10) days** from the date of entry of this Order. The Government **SHALL RESPOND** to any severance motions within **seven (7) days** from the date of submission of the defense motions.

This the 27th day of December, 2016.

Gregory F. Van Tatenhove
United States District Judge