UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 3:15-cr-14-GFVT-REW |
| | ) | |
| V. | ) | |
| | ) | |
| ROBERT L. BERTRAM, M.D., *et al.*, | ) | **OPINION** |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This case presents a recurring evidentiary concern in an age of advancing technology. Simply put, may emails be authenticated under the Federal Rules of Evidence by someone other than the sender or recipient? This Court answered "yes" to that question on several occasions throughout the course of trial. What follows is a more detailed articulation of the reasons why, as a supplement to the Court's rulings from the bench. Also addressed is one of the more frequently used substantive grounds for admission—co-conspirator statements.

Federal Rule of Evidence 901 requires records to be properly authenticated before they are admitted into evidence at trial. To satisfy the requirement of authenticating a certain record, the proponent of the record "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The Sixth Circuit permits authenticity to be established through the introduction of circumstantial evidence. *See United States v. Crosgrove*, 637 F.3d 646, 658 (6th Cir. 2011). And Federal Rule of Evidence 901(b) provides a non-exhaustive list of ways in which the requirements of Rule 901(a) may be satisfied.

Despite the prevalence of email communication in this day and age, case law in the Sixth Circuit regarding how Rule 901 relates to the authentication of emails is sparse. A number of

other courts, however, have suggested the key factor in the Rule 901(b) list when it comes to email authentication is Rule 901(b)(4). That provision explains that records may be authenticated by the introduction of testimony regarding their unique characteristics: i.e., the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). In fact, Rule 901(b)(4) is "one of the most frequently used to authenticate email and other electronic records." *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 546 (D. Md. 2007).

For example, the Eleventh Circuit found a number of emails to be properly authenticated under Rule 901(b)(4) in *United States v. Siddiqui*, 235 F.3d 1318 (11th Cir. 2000). In *Siddiqui*, the Government sought to introduce emails purportedly from Siddiqui, the defendant, through the individuals who received those emails. 235 F.3d at 1322. Siddiqui objected, but the Eleventh Circuit noted the emails' contents, patterns, and distinctive characteristics satisfied the authentication requirements in Rule 901(b)(4). For example, the emails bore an email address which included a portion of Siddiqui's name as well as the university at which he was employed. *Id.* The emails referred to the author as "Mo," a nickname the Government witnesses could attribute to Siddiqui. *Id.* at 1323. Further, the content of the emails bolstered the idea that defendant Siddiqui was, in fact, the sender, because the content included information about which Siddiqui would know and because the Government witnesses could testify to related phone conversations with Siddiqui about the email content. *Id.* at 1322-23.

The same rationale has been employed by other courts ruling on the authenticity of both emails and text messages. For example, the D.C. Circuit Court found emails to be properly authenticated under Rule 901(b)(4) where the email addresses at issue contained the name of the person connected to the address; where the names of the senders or recipients of the emails were

2

frequently included in either the email content or signature blocks; and where the email content involved "discussions of various identifiable matters." *United States v. Safavian*, 435 F. Supp. 2d 36 (D.C. Cir. 2006). And in *United States v. Fluker*, the Seventh Circuit found emails to be properly authenticated even though neither the author nor anyone who saw the author write the emails testified. 698 F.3d 988, 998-1000 (7th Cir. 2012). In that case, there was sufficient circumstantial evidence to authenticate the emails under Rule 901(b)(4), such as the email addresses at issue and the content of the communication. *See also United States v. Kilpatrick*, No. 10-20403, 2012 WL 3236727 (E.D. Mich. Aug. 7, 2012) (noting the text messages in question had "distinctive characteristics" under Rule 901(b)(4) such as distinct auto-signatures, nicknames, unique PIN numbers, and distinctive language patterns).

These cases stand in contrast with two cases submitted by the Defendants, where emails were properly found unauthenticated under various Rules of Evidence, including Rule 901(b)(4). For instance, in *Jimena v. UBS AG Bank, Inc.*, an Eastern District of California court excluded emails one party sought to introduce through the email recipient. *See* No. 1:07-cv-00367, 2011 WL 2551413 (E.D. Cal. June 27, 2011). The court noted that there was no evidence the recipient actually knew the purported sender or had prior communication with the sender. Also, there were no unique characteristics linking the received emails to the purported sender. *Id.* Similarly, in *In re Second Chance Body Armor, Inc.*, the Western District of Michigan Bankruptcy Court excluded emails because they were "neither self-authenticating, authenticated by a witness with knowledge, nor authenticated through any other permissible means." *See* 434 B.R. 502, 505 (Bankr. W.D. Mich. 2010). In that case, one party attempted to authenticate certain emails through a witness with no personal knowledge of the conversation, who had never seen the email before, and who was not present at a meeting described in the contents of the email. *Id.* The

3

Defendants emphasize the fact that the witness was not a sender or recipient of the excluded emails. But a reading of the Bankruptcy Court case in its entirety suggests that the court's decision did not rest on the witness's lack of participation in the communication but on the fact that the emails could not be "authenticated through any other permissible means," such as Rule 901(b)(4). *Id.*

None of these cases specifically speak to whether an email may be authenticated under Rule 901(b)(4) by an individual that is neither a recipient nor a sender of the communication. But the weight of the case law suggests participation in a particular email is not a prerequisite to authenticating it. The case law on the whole suggests that the key consideration in email authentication is not simply whether the witness on the stand was a sender or recipient of the email, but whether the testifying witness can speak to the email's unique characteristics, contents, and appearance. After all, Federal Rule of Evidence 901 establishes a seemingly low bar for authenticating or identifying evidence in the first instance, and the characteristics set out in Rule 901(b)(4) are particularly useful in demonstrating that an email is, in fact, what it purports to be.

The Court's rulings with regard to Government Exhibit 101B clarify these principles. Exhibit 101B includes a series of emails, the first to which Government witness Kris Kaiser was a party. Ms. Kaiser testified that she performed billing services on behalf of the Defendants' laboratory PremierTox, and in this role she had reason to interact with the five Defendants via email correspondence. During its direct examination, the Government showed Ms. Kaiser a number of emails that she either sent to or received from the Defendants in the course of her Liberty Billing duties. And the Government elicited testimony from Ms. Kaiser about her familiarity with the Defendants' email addresses and signature characteristics, particularly those

4

of Brian Walters and Bryan Wood.

The section of Exhibit 101B including an email message between Ms. Kaiser and Defendant Bertram was introduced without incident, as Ms. Kaiser was a party to that communication. But the Defendants objected to the Government's attempt to introduce emails between Defendants Bryan Wood and Brian Walters through Ms. Kaiser, because Kaiser was not copied on those emails and presumably had never seen them before. After reviewing the issue over the course of an evening recess and as stated on the record, the Court concluded the authenticity requirements were satisfied with respect to those emails. Despite Kaiser's lack of personal participation in the communication, she could speak to the authenticity of the emails under Rule 901(b)(4).

For example, Ms. Kaiser could verify the email addresses of both Defendants as the addresses used by those men based on her prior communication with them. The email addresses themselves contained some identifying information, which Ms. Kaiser was able to explain to the jury. The email address used by Brian Walters, "brian@premierintegrity.com", contains his first name and his workplace. And the email addressed used by Bryan Wood, "kyerdoc11kids@yahoo.com", makes reference to his professional work as an Emergency Medicine physician and the fact that he has eleven children. Further, the emails from Dr. Wood contain an auto-signature, "Bryan S Wood MD", and those emails were also signed "bw." Kaiser testified that she knew Dr. Wood typically signed his emails with those lowercase initials. Surely these are the kinds of "contents, substance, internal patterns, or other distinctive characteristics" contemplated under Federal Rule of Evidence 901(b)(4).

The Court notes that neither of those two Defendants ever actually alleged the emails were not authentic. The Defendants did not claim to have never seen or received the emails, and

5

they did not attempt to argue that someone else (an administrative assistant, for example) had been using their email addresses. Defense counsel's argument against admissibility of the emails focused solely on the notion that the Government had not satisfied Rule 901's requirements. *See Midwest Retailers Ass'n, Ltd. V. City of Toledo*, 582 F. Supp. 2d 931, 934-35 (N.D. Ohio Oct. 14, 2008) (calling a similar approach to challenging the admissibility of emails "hyper-technical and abstract," and noting the challenge was "undercut by the lack of any allegation" that the emails were actually inauthentic).[1]

Like the D.C. Circuit Court in *United States v. Safavian* pointed out, the undersigned need not determine "that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that the *jury* might ultimately do so." 435 F. Supp. 2d at 38 (citing 31 Fed. Prac. & Proc. Evidence § 7102 (1st ed.)) (emphasis in original). A jury considering the email exchange between Defendants Wood and Walters could easily recognize and accept it as such. And the Government could properly use Kris Kaiser to authenticate the emails, as she had a personal history of communicating with the Defendants via email and, thus, could testify about the various distinctive characteristics of the emails for purposes of Rule 901(b)(4).

But notably, even if an email is properly authenticated, it still must be substantively admissible. For this reason, the Court has considered various other Rules of Evidence throughout the trial to determine whether each email is properly admitted. A number of emails,

---

[1] In addition to eliciting testimony from Ms. Kaiser about her history and familiarity with the Defendants' email communication tendencies, the Government also presented the Court with an affidavit from Jonathan Robins, the National Director of E-Discovery Operation for the company responsible for data collection during the course of the Government's investigation. This affidavit standing alone would have been an insufficient means of authentication, because Mr. Robins was not an actual custodian of the emails and could speak only to the data collection procedures used to acquire the emails. *Compare Safavian*, 435 F. Supp. 2d at 39 (allowing the authentication of emails based on an affidavit of an official records custodian under Rule 902(11)). Nonetheless, the Court notes that this is one additional factor suggesting the emails the Government introduced were not tampered with or otherwise altered in a way that would call into question their authenticity.

for example, were admitted over hearsay objections as co-conspirator statements under Rule 801(d)(2)(E). For an out-of-court statement to be admissible under that rule, the offering party must establish by a preponderance of the evidence that (1) a conspiracy existed; (2) the defendant was a member of the conspiracy; and (3) the co-conspirator's statement was made during the course and in furtherance of the conspiracy. *United States v. Kelsor*, 665 F.3d 684, 693 (6th Cir. 2011); *see also United States v. Enright*, 579 F.2d 980 (6th Cir. 1978). Sixth Circuit case law notes that a statement is made in furtherance of a conspiracy simply "if it was intended to promote conspiratorial objectives;" the statement need not actually further the conspiracy. *See United States v. Salgado*, 250 F.3d 438, 449 (6th Cir. 2001). Additionally, "[s]tatements in furtherance of a conspiracy take many forms, including statements that keep a co-conspirator apprised of another's activities, induce continued participation, or allay his fears." *Kelsor*, 665 F.3d at 694.

As explained on the record, the Court preliminarily admitted a number of emails as co-conspirator statements in this case. And the Court found those statements to be properly admitted. The evidence establishes that the three admissibility requirements were proven by a preponderance of the evidence. *Id.* at 693.

A number of witnesses, including Allen Sellars, Kris Kaiser, Lisa Johnson, and Eric Duncan, offered testimony specifically linking the five Defendants together as joint owners of PremierTox. Mr. Duncan, the former Chief Executive Officer of PremierTox, testified that the five Defendants were frequently involved at the laboratory. Duncan testified to attending board meetings with all five Defendants, but he also knew that sometimes the five Defendants met separately without him. Further, the Government introduced evidence of the PremierTox Operation Agreement entered into by the five Defendants. And the Government also put on

proof of Defendants' joint purchase of a condominium in Colorado and the Defendants' emails among themselves regarding their use of that condo.

This evidence, among other facts presented over the course of the trial, establishes the existence of a conspiracy and also places all five Defendants in the conspiracy by a preponderance of the evidence. *See id.* at 693. Moreover, the statements in those emails preliminarily admitted as co-conspirator statements all related to the operation of PremierTox or the relationship between SelfRefind and PremierTox, establishing by a preponderance of the evidence that those statements were made "during the course and in furtherance of the conspiracy" or "to promote conspiratorial objectives." *Id.*; *Salgado*, 250 F.3d at 449.[2]

In the end, the Court emphasizes that the key consideration in an authentication analysis is whether the piece evidence is, in fact, what the proponent claims it is. After considering the characteristics of the numerous emails at issue in this case as well as the context and background testimony provided by the authenticating witnesses, the Court has little doubt that the emails are exactly what they purport to be, and this remains true regardless of whether the authenticating witness was a sender or recipient. Finally, the Court finds the emails were also properly admitted on substantive grounds, as set forth in this opinion and consistent with the trial record.

---

[2] That the jury acquitted all five Defendants of the conspiracy charge does not change the Court's conclusion. Where a district court is persuaded by a preponderance of the evidence that the statements in question were made in furtherance of a conspiracy, the statements are admissible even if a jury ultimately finds the evidence insufficient to convict beyond a reasonable doubt. "Each circuit that has confronted this question has held that the acquittal of the declarant of conspiracy does not render the statement inadmissible under the co-conspirator exception." *United States v. Lacey*, 856 F. Supp. 599, 602 (D. Kan. 1994) (collecting cases); *see also, e.g.*, *United States v. Peralta*, 941 F.2d 1003 (9th Cir. 1991); *United States v. Carroll*, 860 F.2d 500 91st Cir. 1988); *United States v. Kincade*, 714 F. 2d 1064 (11th Cir. 1983).

This the 14th day of April, 2017.

Gregory F. Van Tatenhove
United States District Judge