UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:15-cr-00014-GFVT-REW |
| V. | ) | |
| | ) | |
| ROBERT L. BERTRAM, M.D., *et al.*, | ) | **OPINION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

After many days of trial, these five defendants were convicted of seventeen counts of healthcare fraud. The jury, though, acquitted the five on 83 other counts. Now, at sentencing, the United States Probation Office and the Government urge that the defendants be held accountable for all of their conduct as encompassed by all 100 counts. That seems wrong. But the law allows just such a result, and the question before this Court at sentencing was whether that should be the result in this case. It should not. This Opinion further explains the reasons why.

While non-lawyers are often confused on this point, a "not guilty" verdict is viewed in the law as very different from a determination that an actor did not commit a crime. We ask jurors to make a judgment about the strength of evidence and return a verdict only when it is particularly strong. Sometimes, there is more evidence than not that a crime has been committed, but that is not enough for a conviction. It can be enough, though, for determining a sentence.

This contradiction has been the subject of much debate by judges and academics. In 1997, the Supreme Court of the United States determined that the sentencing judge in District Court could consider acquitted conduct, so long as the Government proves such conduct by a preponderance of the evidence. *United States v. Watt*, 519, U.S. 148, 157 (1997). The Supreme Court modified this principle three years later, requiring proof beyond a reasonable doubt for conduct that would increase the penalty beyond the *statutory* maximum of the crime of which the defendant either pleaded guilty to or was convicted by a jury. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The Supreme Court discussed the Sixth Amendment concerns with allowing a judge to determine a fact that increased the punishment beyond the statutory maximum. *Id.* at 488.

But after these decisions, the Supreme Court found the provisions of the Federal Sentencing Act that required mandatory application of the Sentencing Guidelines to be unconstitutional as a violation of the Sixth Amendment. *United States v. Booker*, 543 U.S. 220 (2005). And though the Guidelines are no longer mandatory, the Supreme Court has upheld the constitutionality of the presumptive reasonableness the Circuit Courts of Appeals give to sentences falling within the correctly calculated Guideline range. *Rita v. United States*, 551 U.S. 338 (2007). Circuit Courts of Appeals have consistently held the advisory nature of the Guidelines permits a District Court to consider acquitted conduct if the judge finds those facts by a preponderance of the evidence, even when that conduct increases the sentence recommended under the Guidelines. *See, e.g.*, *United States v. Ramirez-Negrón*, 751 F.3d 42 (1st Cir. 2014); *Portalatin v. Graham*, 642 F.3d 69 (2d Cir. 2010); *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007); *United States v. Ventura*, 864 F.3d 301 (4th Cir. 2017); *United States v. O'Brien*, 560 U.S. 218 (5th Cir. 2010); *United States v. White*, 551 F.3d 381, (6th Cir. 2008); *United States v.*

*White*, 472 F.3d 458 (7th Cir. 2006); *United States v. Papakee*, 573 F.3d 569 (8th Cir. 2009); *United States v. Mercado*, 474 F.3d 654 (9th Cir. 2007); *United States v. Bass*, 661 F.3d 1299 (10th Cir. 2011); *United States v. Faust*, 456 F.3d 1342 (11th Cir. 2006); *United States v. Settles*, 530 F.3d 920 (D.C. Cir. 2008).

However, the Supreme Court has rejected opportunities to grant certiorari for cases such as this one, when the consideration of acquitted conduct ultimately presents a Guideline range that mirrors what would have been calculated had the defendants been found guilty on all charges. *See Jones v. United States*, 135 S. Ct. 8 (2014). Additionally, many jurists have raised issues with sentencing acquitted conduct based only on a preponderance of the evidence. Justice Scalia disagreed with the remedial determination in *Booker*, "believing instead that the proper remedy was to maintain the mandatory character of the Guidelines and simply to require, for that small category of cases in which a fact was legally essential to the sentence imposed, that the fact be proved to a jury beyond a reasonable doubt or admitted by the defendant." *Rita*, 551 U.S. at 368 (Scalia, J., concurring).

In the Sixth Circuit, Judge Merritt disagreed with allowing district courts to use acquitted conduct, saying the use of such "to punish is wrong as a matter of statutory and constitutional interpretation and violates both our common law heritage and common sense." *White*, 551 F.3d at 387 (Merritt, J., dissenting). Various Circuit Judges have expressed similar sentiments. *See, e.g. United States v. Bell*, 808 F.3d 926, 929 (Millett, J., concurring) ("allowing a judge to dramatically increase a defendant's sentence based on jury-acquitted conduct is at war with the fundamental purpose of the Sixth Amendment's jury-trial guarantee"); *United States v. Casper*, 536 F.3d 409, 418 (5th Cir. 2008) (Dennis, J., concurring) ("I am greatly troubled that a district court can use conduct acquitted by a jury for a sentence enhancement that significantly increases

a sentence beyond that the defendant would have obtained had he been convicted by the jury for that same conduct") *United States v. Canania*, 532 F.3d 767, 776 (Bright, J., concurring) ("A judge violates a defendant's Sixth Amendment rights by making findings of fact that either ignore or countermand those made by the jury and then relies on these factual findings to enhance the defendant's sentence"); *Mercado*, 474 F.3d at 664 (Fletcher, J., dissenting) ("By allowing judges to consider conduct rejected by the jury, the court allows the jury's role to be circumvented by the prosecutor and usurped by the judge—two of the primary entities against whom the jury is supposed to protect the defendant"); *Faust*, 456 F.3d at 1352 (Barkett, J., concurring) ("When a sentencing judge finds facts that could, in themselves, constitute entirely free-standing offenses under the applicable law—that is when an enhancement factor could have been named in the indictment as a complete criminal charge—the Due Process Clause of the Fifth Amendment requires that those facts be proved beyond a reasonable doubt"). Yet the law remains the same: district courts are still permitted to consider conduct acquitted by a jury and appellate courts continue to remind district judges of their discretion. *See, e.g.*, *White*, 551 F.3d at 386 ("To say that district court judges may enhance a defendant's sentence based on acquitted conduct, however, is not to say they *must* do so").

# I

The facts of this case have been recited several times over the course of litigation, but a brief summary is helpful here. [*See, e.g.,* R. 1; R. 82; R. 178.] In November 2015, the United States indicted these five men, Dr. Robert Bertram, Jr., Mr. Wes Bottom, Dr. Robin Peavler, Mr. Brian Walters, and Dr. Bryan Wood, for ninety-nine counts of health care fraud and one count of conspiracy to commit health care fraud. [R. 1.] Dr. Peavler and Dr. Wood co-owned SelfRefind, a chain of substance abuse treatment clinics headquartered in Danville, Kentucky. As part of the

4

prescribed treatment for substance abuse, physicians at SelfRefind tested for the presence or absence of illicit substances in a patient by conducting a urine drug test. SelfRefind conducted initial qualitative drug screens, which could then be submitted to another lab for a quanititative confirmation test if the doctor believed this was necessary. Dr. Peavler and Dr. Wood later joined Dr. Bertram, Mr. Bottom, and Mr. Walters as co-owners of PremierTox, Inc. in Russell Springs, Kentucky. PremierTox was a clinical laboratory that conducted quantitative confirmation urine drug tests for places like SelfRefind.

The Indictment alleged that Dr. Peavler and Dr. Wood referred all urine samples from SelfRefind to PremierTox for testing, even if the initial drug screen did not indicate a need for quantitative confirmation tests. Furthermore, the Indictment alleged that PremierTox accepted these samples even though PremierTox did not yet have the proper equipment to test them. Thus, the urine samples from SelfRefind were frozen at PremierTox and tested later. PremierTox prioritized the testing of fresh urine samples, but continued testing frozen samples and billing insurance providers for the tests on frozen samples, even if many months had passed since the initial collection.

Of the ninety-nine counts of health care fraud charged in the indictment, thirty-six involved claims submitted to Medicaid and/or Medicare, fifteen stemmed from claims submitted to Bluegrass Family Health, and forty-eight resulted from claims submitted to Anthem BlueCross BlueShield. After two and a half weeks of trial, the jury acquitted all five defendants of the conspiracy charge and of eighty-two of the ninety-nine counts of health care fraud. The jury only convicted Dr. Bertram, Mr. Bottom, Dr. Peavler, Mr. Walters, and Dr. Wood of seventeen counts of knowingly and willingly executing a scheme to defraud a health care benefit

program in violation of 18 U.S.C. § 1347. All seventeen counts of conviction were derived from the forty-eight total counts relating to Anthem.

Prior to sentencing, the United States Probation Office completed pre-sentence reports for all five defendants, which included a recommend calculation of the United States Sentencing Guidelines. For a violation of 18 U.S.C. § 1347, the Guidelines sets a base offense level of 6. U.S.S.G. § 2B1.1(a)(2). This base offense level is then adjusted for intended or actual economic loss, the sophistication of the conduct, the defendant's individual role in the offense, as well as potential acceptance of responsibility or obstruction of justice, among other things. Here, the Probation Office calculated the intended loss for all five Defendants to be $2,421,292.26, resulting in a sixteen-level increase under U.S.S.G. § 2B1.1(b)(1)(I); added a two-level increase because the offense involved sophisticated means, under U.S.S.G. § 2B1.1(b)(10)(C); and added a two-level increase because the Defendants abused a position of public or private trust as health care professionals, under U.S.S.G. § 3B1.3. These adjustments resulted in an offense level of twenty-six for each Defendant. Additionally, the Probation Office added four levels to the offense levels of Dr. Bertram and Dr. Wood for their participation as organizers or leaders in the criminal activity pursuant to U.S.S.G. § 3B1.1(a), and the Probation Office added three levels to the offense levels of Dr. Peavler and Mr. Walters for their participation as managers or supervisors in the criminal activity pursuant to U.S.S.G. § 3B1.1(b). Dr. Wood also received a two-level increase for failing to provide financial documentation under U.S.S.G. § 3C1.1. After this, Dr. Bertram had a total offense level of 30, Mr. Bottom had a total offense level of 26, Dr. Peavler had a total offense level of 29, Mr. Walters had a total offense level of 29, and Dr. Wood had a total offense level of 32. All five Defendants had a criminal history category of I. Pursuant to the guidelines, Mr. Bottom faced 63–78 months imprisonment, Dr. Peavler and Mr.

Walters each faced 87–108 months imprisonment, Dr. Bertram faced 97–121 months imprisonment, and Dr. Wood faced 121–151 months imprisonment.

All five Defendants objected to each of these adjustments, arguing their total offense level for each Defendant should be 6, making each Defendant eligible for probation. At sentencing, the Court upheld the two-level increase for use of sophisticated means under § 3B1.1(b)(10)(C), the three- and four-level enhancements for the Defendants' various roles in the offense under § 3B1.1(a) and (b), and the two-level increase for abuse of position of public or private trust under § 3B1.3. However, for the reasons below, the Court sustained the Defendants' objections to the sixteen-level increase for an intended loss of $2,421,292.26.[1]

In calculating the intended loss, the Probation Office used the aggregate dollar amount of all bills allegedly submitted to health care benefit programs for all ninety-nine counts of fraud listed on the indictment. The Government urged this Court to use that calculation. However, the Defendants objected to this, stating that the loss calculation should be based only on the seventeen counts for which they were convicted by a jury. The Presentence Report calculated the actual loss for these seventeen counts a $3,378.37.[2] For a loss of less than $6,500, the Guidelines recommend no increase, which would have resulted in a total offense level of 14 for Dr. Bertram and Dr. Wood, a total offense level of 13 for Dr. Peavler and Mr. Walters, and a total offense level of 10 for Mr. Bottom. Dr. Bertram and Dr. Wood would then face 15–21 months imprisonment instead of 97–121 months; Dr. Peavler and Mr. Walters would face 12–18 months imprisonment instead of 87–108 months; and Mr. Bottom would face 6–12 months

---

[1] For reasons unimportant to this Opinion, the Court also sustained Dr. Wood's objection to the two-level increase for obstruction of justice. This brought Dr. Wood's total offense level to 30, carrying 97–121 months imprisonment.
[2] This is the amount claimed by Anthem for restitution as the amount Anthem paid PremierTox and the five Defendants for bills the jury found to be fraudulent.

imprisonment instead of 63–78 months. The sixteen-level increase urged by the Government clearly presents a large disparity in resulting sentencing Guideline calculations.

## II

### A

A District Judge is permitted to consider acquitted conduct when calculating a Guideline range and sentencing a defendant. In the Sixth Circuit, to consider conduct that was not charged by the government or was acquitted at trial, a District Court must only find the existence of such facts by a preponderance of the evidence. *United States v. White*, 551 F.3d 381 (6th Cir. 2008). Because the Guidelines are advisory, the Sixth Circuit does not consider the use of acquitted conduct a violation of the Sixth Amendment, so long as the use of acquitted conduct does not increase the sentence above the statutory maximum. *Id.* at 384–85. However, the Sixth Circuit also does not *mandate* the consideration of acquitted conduct. *Id.* at 386. A District Judge could choose to ignore acquitted conduct if the Judge is not persuaded by a preponderance of the evidence or if the Guideline range is too high or low to accomplish purposes established in 18 U.S.C. § 3553(a). *Id.* "[A] factual presentation that fails to persuade a jury beyond a reasonable doubt may well fail to persuade a judge by a preponderance of the evidence." *Id.* Additionally, "To say that district court judges may enhance a defendant's sentence based on acquitted conduct, however, is not to say that they *must* do so," and the district court can choose to "effectively negate[] the acquitted-conduct enhancement." *Id.* The Sixth Circuit considers a sentence unreasonable if a District Court does not calculate a Guidelines range, improperly calculates a defendant's Guideline range, treats the Guideline calculation and range as mandatory, fails to consider factors listed in 18 U.S.C. § 3553(a), imposes a sentence based on "clearly erroneous facts," or fails to give an adequate explanation for the sentence. *United States*

v. *Jones*, 641 F.3d 706, 711–12 (6th Cir. 2011) (citing *United States v. Peebles*, 624 F.3d 344, 347 (6th Cir. 2010).

**B**

Today, this Court exercises that discretion by declining to consider the acquitted conduct presented by the Government and the Probation Office. Title 18 U.S.C. § 3553(a) outlines seven factors the court must consider when imposing a sentence. Included in these factors, the Court must consider the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense and to afford adequate deterrence to criminal conduct. The Court must impose a sentence sufficient to accomplish these goals, but *not greater than necessary*. 18 U.S.C. § 3553(a). Considering these factors for white collar crime results in much different sentences than those of other crime, not because of the differences in defendants, but because of the differences in the nature of the crime itself and the way the Guidelines treat such criminal activity. After reviewing these factors, the Court determines that considering acquitted conduct would result in a sentence greater than necessary to accomplish the goals of § 3553(a).

**1**

First, this Court considers the nature of the crime for which the Defendants have been convicted and the need for the sentence to reflect the seriousness of such crime. When sentencing economic criminal activity, the Guidelines impose a low base offense level, but increase that offense based on loss. This loss does not take into account the number of victims or true culpability, but only the intended amount of money a defendant hoped to derive from the scheme. In reality, a defendant is not proportionally more or less culpable based on the amount of intended loss. For example, a defendant may plan to defraud a set of victims for $1,000,000, while another defendant plans to defraud those same victims of $100,000. Even if both

9

defendants only actually defraud those victims of $100,000, the Guidelines dictate defendant one receives a 16-level increase while defendant two only receives an 8-level increase. U.S.S.G. § 2B1.1(b)(1). For defendants with a criminal history category of I, this means the same conduct results in a Guideline range of 15–21 months for defendant two, but 41–51 months for defendant one. In some cases, such a determination overstates the culpability of a defendant with a higher intended loss.

Additionally, when that intended loss is determined based on acquitted conduct, the sentencing calculation seemingly ignores the jury's verdict. Here, the jury acquitted the Defendants of 83 counts, rejecting the idea that the Defendants were culpable for all $2,421,292 for which the Government indicted them. The jury found them guilty of only 17 counts, of which the actual loss was merely $3,378.37, billing Anthem for only $30,600[3] of the nearly $2.5 million alleged. To calculate the Guidelines, a loss of $2,421,292 increase the base offense from 6 to 22, while a loss of $30,600 only increased the base offense from 6 to 10. U.S.S.G. § 2B1.1(b)(1). Increasing the offense level based on loss raises the Guideline range from 6–12 months to 41–51 months, a drastic difference.

Moreover, using the higher loss figure in one sense amounts to this Court supplanting its own verdict in place of the verdict rendered by the jury. As this Court has stated before, trial by jury is a hallmark of the American justice system. This practice, though sometimes puzzling, is crucial when it comes to protecting the constitutional rights and liberties of the American people—including the rights and liberties of the five Defendants.[4] The jury's view of accountability was far more limited than the Government's view, and the Court should be

---

[3] *See infra*, IV.
[4] *See, e.g.*, Letter from Thomas Jefferson to Thomas Paine, *in* 7 THE WRITINGS OF THOMAS JEFFERSON 408 (Albert Ellergy Bergh ed., 1905) ("I consider trial by jury as the *only* anchor ever yet imagined by man, by which a government can be held to the principles of its constitution.") (emphasis added).

respectful of that determination in the context of applying the § 3553(a) factors.  Thus, the Court finds that sentencing the Defendants under a Guideline range calculated for an intended loss of $2,421,292 is far greater than necessary when considering the nature of this crime.

2

Next, the Court considers the deterrent effect of such a sentence as reflected in the need to promote respect for the law and deter future conduct.  Defendants charged with white collar criminal activity often have never been arrested, much less served any term of incarceration, prior to the instant offense.  Often, they are well-connected individuals, in whom the community has placed a significant amount of trust and respect.  Thus, any custodial sentence of any amount of time results in a higher deterrence rate for these defendants than for a defendant who is no stranger to the court system and to jail.  While this may not be the case all the time, it is most certainly the case here, as all five defendants pleaded with this Court to reduce their sentence to probation.  A sentence of some incarceration is required, otherwise convicted white collar criminals would be able to continue their criminal activity, knowing that they could simply pay it all back if they were to get caught.  Incarceration of some sort is necessary to eliminate the allure of economic crime, as it is definitely warranted in this case.  However, with some defendants, a shorter sentence of incarceration may provide the same deterrent effect to potential criminals as a longer sentence, simply because *any* custodial sentence is extremely unappealing to many, but not all, white collar criminals.  The certainty of incarceration, not the amount, is what provides the greatest deterrent to such economic crimes.  Therefore, *any* sentence at all may very well be sufficient to accomplish the goals of 18 U.S.C. § 3553(a), and a sentence of five to ten years is most certainly greater than necessary if a sentence of one to two years would provide the same deterrence.

11

## C

In this case, the Court determines that a four-level increase, rather than a sixteen-level increase, is appropriate under U.S.S.G. § 2B1.1(b)(1)(C). The calculation of loss under § 2B1.1(b)(1) is determined by the greater of either actual loss or intended loss. U.S.S.G. § 2B1.1, Application Note 3(A). Anthem has established actual loss at $3,378.37 for the seventeen counts of conviction. However, in offenses involving Government Health Care Programs, the calculation of loss is determined by the aggregate dollar amount of fraudulent bills submitted to the health care program. U.S.S.G. § 2B1.1, Application Note 3(F)(viii). For each urine quantitative confirmation test, PremierTox billed health care providers $1,800. The conviction on seventeen counts means that the Defendants, beyond a reasonable doubt, billed Anthem $1,800 at least seventeen times, resulting in a total bill of $30,600. This amount is more than $15,000 but not more than $40,000, ensuing a Guideline increase of four levels.

Using this four-level increase instead of the sixteen-level increase proposed by the Probation Office, this Court calculated the total offense level for Dr. Bertram and Dr. Wood at 18, the total offense level for Dr. Peavler and Mr. Walters at 17, and the total offense level for Mr. Bottom at 14. Therefore, Dr. Bertram and Dr. Wood faced 27–33 months imprisonment, Dr. Peavler and Mr. Walters faced 24–30 months imprisonment, and Mr. Bottom faced 15–21 months imprisonment. Applying the factors contemplated in 18 U.S.C. § 3553(a), this Court departed from the Guidelines for each Defendant based on the history and characteristics of the Defendants and their contributions to their communities apart from criminal involvement. Ultimately, this Court sentenced Dr. Bertram and Dr. Wood to 21 months imprisonment, Dr. Peavler and Mr. Walters to 18 months imprisonment, and Mr. Bottom to 13 months imprisonment.

**III**

Just communities must engage in the civic task of sanctioning members of the community for criminal wrongdoing. The legitimacy of this task, in large measure, rests on how communities go about this business. And the long democratic tradition of using juries as fact finders is central to maintaining confidence in the process.

Juries almost always get it right. And judges are wise to respect that, even in the context of fulfilling their statutory duty to impose a just sentence. Here, the "not guilty" verdicts mean something, something that informs this Court's application of the statutory sentencing goals.

This the 21st day of February, 2018.

Gregory F. Van Tatenhove
United States District Judge