UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Criminal No. 3:15-cr-00014-GFVT-REW |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ROBERT L. BERTRAM, M.D., *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court on the Defendants' various motions for release pending appeal. [R. 422; R. 423; R. 426; R. 427.] Because they have not adequately raised a substantial question of law or fact likely to result in reversal, these motions must be **DENIED**. *See* 18 U.S.C. § 3143(b).

**I**

The facts have been recited several times over the course of litigation, but a brief summary is helpful here. [*See, e.g.,* R. 1; R. 82; R. 178.] In November 2015, the United States indicted these five men, Dr. Robert Bertram, Jr., Mr. Wes Bottom, Dr. Robin Peavler, Mr. Brian Walters, and Dr. Bryan Wood, for ninety-nine counts of health care fraud and one count of conspiracy to commit health care fraud. [R. 1.] Dr. Peavler and Dr. Wood co-owned SelfRefind, a chain of substance abuse treatment clinics headquartered in Danville, Kentucky. As part of the prescribed treatment for substance abuse, physicians at SelfRefind tested for the presence or absence of illicit substances in a patient by conducting a urine drug test. SelfRefind conducted initial qualitative drug screens, which could then be submitted to another lab for a quanititative confirmation test if the doctor believed this was necessary. Dr. Peavler and Dr. Wood later

joined Dr. Bertram, Mr. Bottom, and Mr. Walters as co-owners of PremierTox, Inc. in Russell Springs, Kentucky. PremierTox was a clinical laboratory that conducted quantitative confirmation urine drug tests for places like SelfRefind.

The Indictment alleged that Dr. Peavler and Dr. Wood referred all urine samples from SelfRefind to PremierTox for testing, even if the initial drug screen did not indicate a need for quantitative confirmation tests. Furthermore, the Indictment alleged that PremierTox accepted these samples even though PremierTox did not yet have the proper equipment to test the samples. Thus, the urine samples from SelfRefind were frozen at PremierTox and tested later. PremierTox prioritized the testing of fresh urine samples, but continued testing frozen samples and billing insurance providers for the tests on frozen samples, even if many months had passed since the initial collection.

Of the ninety-nine counts of health care fraud charged in the indictment, thirty-six involved claims submitted to Medicaid and/or Medicare, fifteen stemmed from claims submitted to Bluegrass Family Health, and forty-eight resulted from claims submitted to Anthem BlueCross BlueShield. After two and a half weeks of trial, the jury acquitted all five defendants of the conspiracy charge and of eighty-two of the ninety-nine counts of health care fraud. The jury only convicted Dr. Bertram, Mr. Bottom, Dr. Peavler, Mr. Walters, and Dr. Wood of seventeen counts of knowingly and willingly executing a scheme to defraud a health care benefit program in violation of 18 U.S.C. § 1347. All seventeen counts of conviction were derived from the forty-eight total counts relating to Anthem.

During and after trial, all five Defendants filed various motions for acquittal under Federal Rule of Criminal Procedure 29 and for a new trial pursuant to Federal Rule of Criminal Procedure 33, asserting claims of insufficient evidence, insufficient weight of evidence,

reversible legal error, and improper criminalization of opinions of medical necessity, among others. [R. 267; R. 270; R. 300; R. 301; R. 302; R. 303; R. 304; R. 305; R. 306.] This Court denied these motions. [R. 350.] On December 11, 2017, Dr. Bertram was sentenced to twenty-one months imprisonment [R. 385], Mr. Bottom was sentenced to thirteen months imprisonment [R. 387], Dr. Peavler was sentenced to eighteen months imprisonment [R. 389], Mr. Walters was sentenced to eighteen months imprisonment [R. 391], and Dr. Wood was sentenced to twenty-one months imprisonment [R. 393]. All filed notices of appeal. [R. 394; R. 395; R. 398; R. 401; R. 402.]

Each Defendant now requests release pending appeal pursuant to 18 U.S.C. § 3143(b)(1), citing substantial questions of law. Mr. Bottom and Mr. Walters filed a joint motion, claiming the Sixth Circuit would likely find an absence of evidence for conviction, error as to the enhancements applied at sentencing, and error as to the loss amount determined at sentencing. [R. 422 at 8–16.] Dr. Wood also asserted an absence of evidence as a substantial question, but also raised issue with the representation of "medical necessity," asserting a substantial question as to whether he could be convicted when qualified medical experts disagree as to what was "medically necessary." [R. 423-1 at 3–13.] Dr. Bertram adopts the arguments presented by Mr. Bottom, Mr. Walters, and Dr. Wood, reiterating questions as to sufficient evidence and conviction when experts disagree as to medical necessity. [R. 436 at 6–7.] Dr. Peavler also adopts these arguments. [R. 427-1.] Alternatively, Dr. Wood requests this Court delay their report date until the Sixth Circuit issues a decision in *United States v. Paulus*, No. 0:15-cr-00015-DLB, 2017 WL 908409 (E.D. Ky. March 7, 2017). [R. 423-1 at 13.]

Aside from the issues related to sentencing, Defendants raise essentially the same claims as their post-conviction motions, with the added concern that this Court erred in denying those

motions. First, Defendants maintain that the Government did not present sufficient evidence to result in a conviction, and next, that medical necessity is a matter of opinion that cannot be relied upon to determine criminal culpability for fraud. The Court has already addressed these issues in a previous order. [R. 350.] However, the Defendants ask this Court to grant release pending appeal because a favorable Sixth Circuit decision would result in reversal or a reduced sentence.

## II

### A

The Bail Reform Act, 18 U.S.C. § 3143(b), creates a presumption against release pending appeal. *United States v. Vance*, 851 F.2d 166, 168 (6th Cir. 1988), *cert. denied*, 488 U.S. 893 (1988). In order to be released pending appeal, a defendant must establish two things: first, he must show, by clear and convincing evidence, that he is not likely to flee or pose a danger to the safety of another person or the community; and second, that the appeal is not for delay and raises a substantial question of law or fact likely to result in reversal, an order for new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. 18 U.S.C. § 3143(b); *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002); *Vance*, 851 F.2d at 167 (noting that defendant bears the burden of overcoming statutory presumption of detention). The United States concedes that the Defendants are neither dangers to the community nor flight risk, satisfying the first part of the § 3143(b) test. [R. 432 at 2, n. 1.] Furthermore, the United States does not argue that the Defendants' appeal is for purposes of delay. Thus, the Court will focus on whether the appeal raises a substantial question of law or fact.

In determining whether a question on appeal raises "a substantial question of law or fact," a Court does not need to find that it committed reversible error. *United States v. Pollard*, 778 F.2d 1177, 1181 (6th Cir. 1985). To determine whether the question is, in fact, substantial, "a judge must essentially evaluate the difficulty of the question he previously decided." *United States v. Sutherlin*, 84 F. App'x 630, 631 (6th Cir. 2003) (*quoting United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986)). It must be a "close question" that can "go either way." *Pollard*, 778 F.2d at 1182 (citations omitted). The defendant bears the burden of proving the substantiality of the question. *Vance*, 851 F.2d at 167.

**1**

Defendants first contend that the Government failed to present sufficient evidence in regards to mental state and intent to defraud. [R. 422 at 8–15; R. 423-1 at 10–13; R. 426 at 6–7; R. 427-1 at 4.] This Court has already considered the sufficiency of the evidence in ruling on Defendants' Rule 29 motions. [R. 350.] When considering a Rule 29 motion based on an alleged insufficiency of the evidence, the Court may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute its judgment for that of the jury. *See United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015). Instead, the Court views all of the evidence in the light most favorable to the Government, and then it considers whether any rational trier of fact could find the elements of the counts of conviction beyond a reasonable doubt. *See, e.g.*, *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016); *United States v. Villarce*, 323 F.3d 435, 438 (6th Cir. 2003). "In sum, a defendant claiming insufficiency of the evidence bears a very heavy burden." *Callahan*, 801 F.3d at 616 (quoting *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007)).

5

In denying their Rule 29 motions, this Court relied on clear Sixth Circuit precedent. Even without direct evidence, a jury may infer the requisite knowledge and intent of a defendant. *United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007). The jury is permitted to consider circumstantial evidence, such as efforts to conceal the activity, misrepresentations, proof of knowledge, and proof of profits, to infer evidence of intent. *Id.* Additionally, the Sixth Circuit maintains that this circumstantial evidence is enough to sustain a conviction. *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007) (quoting *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984)). A rational jury was free to rely on this circumstantial evidence to return a verdict finding the Defendants guilty. *See Stone*, 748 F.2d at 362 (noting that "circumstantial evidence alone can sustain a guilty verdict" and that such evidence "need not remove every reasonable hypothesis except that of guilt"). Therefore, the Defendants' argument that the Government presented no direct evidence of their intent or knowledge is not a substantial question. The Sixth Circuit has already determined circumstantial evidence is sufficient, meaning this Court does not consider Defendants' argument to be a "close question" meriting release. *See United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985) (citations omitted).

**2**

Next, Defendants argue that the absence of "medical necessity" is not a proper basis for criminal liability because medical necessity is an opinion on which reasonable minds can differ. [R. 422 at 13–14; R. 423-1 at 3–10; R. 426 at 6–7; R. 427-1 at 4.] Again, this argument was addressed in the Defendants' Rule 29 motion and, ultimately, denied. [R. 350.] The Court, again, relied on Sixth Circuit precedent to determine that medical necessity can, and has, formed the basis for a health care fraud conviction. [R. 350 at 14.] In both *United States v. Hunt* and *United States v. Martinez*, the Sixth Circuit upheld the jury's guilty verdict because the evidence

6

showed that the defendant submitted claims to insurance companies for services that he knew were not medically necessary, or for services that he knew were not used in patient care. *Hunt*, 521 F.3d 636, 645–46 (6th Cir. 2008); *Martinez*, 588 F.3d 301, 315 (6th Cir. 2009). Defendants attempt to distinguish these cases because they believe these tests were necessary, and thus could not have knowingly misrepresented their medical value. However, as stated above, the Government provided sufficient circumstantial evidence for the jury to infer knowledge and intent. *See, supra,* II.B. After hearing testimony of the experts from both sides, the jury determined these tests were not medically necessary and convicted the Defendants. In order to achieve the acquittal the Defendants request, the Court would have to reweigh the evidence, reevaluate the credibility of witnesses, or substitute its judgment for that of the jury, something the Sixth Circuit prohibits. *See United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015). By relying on Sixth Circuit direction, this Court does not find Defendants' argument concerning medical necessity to be a question that could go either way on appeal. *See United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985) (citations omitted). Thus, Defendants' argument does not overcome the presumption against release pending appeal.

### 3

Finally, Mr. Bottom and Mr. Walters raise issue with the sentencing determination of loss amount, as well as the application of sentencing enhancements for Sophisticated Means, Abuse of Trust, and for Mr. Walters's role as Manager/Supervisor. [R. 422 at 15–16.] However, none of the Defendants provided any case law suggesting that the determination raises a substantial question upon appeal. These sentencing determinations are reviewed by the Sixth Circuit under an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). The Sixth Circuit routinely upholds the applicability of the U.S.S.G. § 2B1.1(b)(10)(C) enhancement for use of sophisticated

7

means in health care fraud cases. *See, e.g. United States v. Mahmud*, 541 F. App'x 630 (6th Cir. 2013); *United States v. Castro-Ramirez*, 461 F. App'x 467 (6th Cir. 2012). Additionally, application of the sentencing enhancement for abuse of a position of public or private trust under U.S.S.G. § 3B1.3 by a health care provider is also well established under Sixth Circuit doctrine. *United States v. Hodge*, 259 F.3d 549, 556 (6th Cir. 2001). As to Mr. Walters's enhancement for his position as a manager or supervisor under U.S.S.G. § 3B1.1(b), the Sixth Circuit authorizes this enhancement based on his position as the "president" and "managing employee" of the company, as well as his signatures on the Medicaid forms. *United States v. Meda*, 812 F.3d 502, 520 (6th Cir. 2015). Because the Sixth Circuit has already addressed these arguments, none of these enhancements present substantial questions of law or fact.

Finally, concerning the Defendants' objection to the intended loss estimate, the Sixth Circuit authorizes this Court to use a much higher amount of loss, found only by a preponderance of the evidence. *United States v. White*, 551 F.3d 381 (6th Cir. 2008). However, in honoring the jury's verdict, the Court used its permitted discretion by declining to consider acquitted conduct. [R. 445.] This Court's use of its discretion, accordingly, does not present a "close question" of law or fact.

**B**

In the alternative, Dr. Wood has requested this Court delay the report date for all five Defendants until the appeal in *United States v. Paulus* has concluded. [R. 423-1 at 13.] In *Paulus*, the jury found a cardiologist guilty of health care fraud based on his performance and subsequent billing for allegedly unnecessary cardiac procedures. *See* No. 0:15-cr-00015-DLB, 2017 WL 908409 (E.D. Ky. March 7, 2017). Following a lengthy trial, the district court judge determined there was insufficient evidence to sustain the verdict and granted the defendant's

8

Rule 29 motion. *Id.* Recognizing that the Sixth Circuit has deemed it "fundamental that a false statement is a factual assertion," the *Paulus* court found that the Government failed to prove Dr. Paulus made any false statements worthy of the jury's fraud conviction. *Id.* at *5. Specifically, the *Paulus* court considered whether the degree of stenosis present in Dr. Paulus's patients—a measurement used to justify the allegedly unnecessary cardiac procedures he performed—was "an *objective fact*, which can be false, or a *subjective opinion*, which is not subject to proof or disproof." *Id.* at *6 (emphasis in original). Considering this, the court went on to conclude the Government had failed to prove beyond a reasonable doubt that Dr. Paulus "knowingly and willfully exaggerated the extent of his patients' stenosis in their medical records, for the purpose of defrauding a health care benefit program." *Id.* The trial evidence showed that estimating the degree of stenosis is a very imprecise exercise for health care providers, and expert witnesses varied significantly in their observations and assessments of the appropriate treatment under the circumstances. *Id.* at *7–9. Accordingly, the court concluded that the expert testimony and angiogram evidence did not permit a rational jury to convict Dr. Paulus of making a false statement, and the court further determined the other circumstantial evidence introduced at trial was, alone, insufficient to sustain the conviction. *Id.* at *9–16. The Government appealed, and the case is now before the Sixth Circuit. Dr. Wood noted that briefing concluded on January 19, 2018, and expects the Court of Appeals to issue a decision this spring. [R. 423-1 at 13.]

However, this Court has already determined that the facts of *Paulus* are notably distinct from the facts in this case. [R. 350 at 11.] Furthermore, Dr. Wood has not identified specific questions in *Paulus* that implicate this case, merely asserting a possibility of a decision that could make reversal more likely. Nor does he present any legal basis for requesting this Court delay

9

his report date.  Regardless of the decision in *Paulus*, this Court finds the case distinguishable from the Defendants' present issues, therefore, not a sufficient basis to delay their report date.

### III

Dr. Robert Bertram, Jr., Mr. Wes Bottom, Dr. Robin Peavler, Mr. Brian Walters, and Dr. Bryan Wood are correct; any favorable decision on these issues by the Sixth Circuit would result in reversal or reduced sentences.  However, this is not the sole criteria for granting release pending appeal, otherwise all criminal defendants would be able to overcome the presumption of detention.  The Defendants are also required to demonstrate that the question of law on appeal presents a substantial question of law, one that is "close" and could "go either way."  Here, Defendants have failed to meet that burden.  This Court finds no substantial questions of law that would merit release pending appeal.  Accordingly, and the Court being sufficiently advised, it is here by **ORDERED** as follows:

1. The Motion for Bond Pending Appeal filed by Defendant Brian Walters and Defendant James W. Bottom [**R. 422**] is **DENIED**;

2. The Motion for Release Pending Appeal filed by Defendant Bryan S. Wood [**R. 423**] is **DENIED**;

3. The Motion for Bond Pending Appeal filed by Defendant Robert L. Bertram, Jr. [**R. 426**] is **DENIED**; and

4. The Motion for Release Pending Appeal filed by Defendant Robin Peavler [**R. 427**] is **DENIED**.

This the 21st day of February, 2018.

Gregory F. Van Tatenhove
United States District Judge